**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| C.A., on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ORACLE CORPORATION,<br><br>*Defendant*. | **Case No.: 1:26-cv-01637-ADA-SH** |
| KELLY LUNDQUIST, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ORACLE CORPORATION and ILLINOIS CENTRAL COLLEGE,<br><br>*Defendants*. | **Case No.: 1:26-cv-01654-ADA-SH** |
| TONI ANDRADE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ORACLE CORPORATION and GLENDALE COMMUNITY COLLEGE,<br><br>*Defendants*. | **Case No.: 1:26-cv-01659-ADA-SH** |

| | |
|---|---|
| ZAC FOSDYCK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ORACLE CORPORATION and ILLINOIS CENTRAL COLLEGE,<br><br>*Defendants*. | **Case No.: 1:26-cv-01774-ADA-SH** |
| ROBERT BEATTY, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ORACLE CORPORATION and NISSAN NORTH AMERICA, INC.,<br><br>*Defendants*. | **Case No.: 1:26-cv-01791-ADA-SH** |

**PLAINTIFFS' MOTION TO CONSOLIDATE ACTIONS AND APPOINT INTERIM CLASS COUNSEL**

## I. INTRODUCTION AND BACKGROUND

Plaintiffs C.A., Kelly Lundquist, Toni Andrade, Zac Fosdyck, and Robert Beatty ("Plaintiffs"), individually, and on behalf of all those similarly situated, respectfully request that the Court, pursuant to Federal Rules of Civil Procedure 23(g)(3) and 42(a): (1) consolidate the above-styled actions into the first-filed *C.A.* action, together with any subsequently filed, removed, or transferred action arising from the same PeopleSoft data incident against Defendant Oracle Corporation ("Oracle") (collectively, "Related Actions") under the new case style: "*In re Oracle PeopleSoft Data Incident Litigation*"; (2) appoint W. Mark Lanier of the Lanier Law Firm. P.C., Gary Klinger of Milberg, PLLC, and Jeff Ostrow of Kopelowitz Ostrow P.A. as Interim Class Counsel ("Proposed Interim Class Counsel"); (3) appoint Anthony M. Christina of Lowey Dannenberg, P.C. and Grayson Wells of Stranch, Jennings & Garvey, PLLC to a Plaintiffs' Executive Committee; (4) stay the Related Actions, including Defendants' responsive pleading deadlines pending a ruling on this motion and, if granted, until a consolidated complaint is filed, and (5) set a schedule directing Plaintiffs to file a Consolidated Complaint within 45 days after the Court grants this motion and appoints Interim Class Counsel, with Defendants to answer or otherwise respond to the Consolidated Complaint within 45 days after its filing.[1]

As discussed below, consolidation is proper because each case is: (i) brought against a common Defendant, Oracle; (ii) is based on the same alleged cybersecurity incident involving Oracle's "PeopleSoft" education software product that allegedly occurred on or around June 10, 2026 (the "PeopleSoft Data Incident" or "Data Incident"); (iii) asserts the same/overlapping allegations and claims for relief; and (iv) seeks to represent the same/overlapping classes. Given the common facts and claims asserted in the actions, consolidation will streamline litigation, ensure

[1] Plaintiffs' counsel has met and conferred with counsel for Defendant Oracle, who does not oppose consolidation and takes no position on the appointment of interim class counsel.

that the classes' interests are protected, and preserve judicial and party resources.

Oracle's PeopleSoft software is allegedly the most popular software in the United States for higher education, including for the management of core operations, payroll, financial aid, human resources, health data maintenance and other purposes. *See C.A. v. Oracle Corporation*, Case No. 1:26-cv-01637 (W.D. Tex.), ECF No. 1 ("C.A. Complaint") ¶ 2. On June 10, 2026, the notorious cybercriminal organization called ShinyHunters allegedly announced their infiltration into PeopleSoft. *Id.* ¶ 3.

Plaintiff C.A. filed the first Class Action Complaint concerning Oracle's PeopleSoft Data Incident on June 17, 2026, seeking to hold Oracle liable for the alleged disclosure of personally identifiable information ("PII") belonging to himself and all other individuals allegedly affected by the Data Incident. Subsequently, four additional Related Actions were filed in this Court arising from the same Data Incident, alleging the same operative facts, and asserting substantially identical claims on behalf of overlapping putative classes, making consolidation into the first-filed *C.A.* action appropriate.

Plaintiffs in each of the Related Actions allege that Oracle failed to implement reasonable data security practices relating to its PeopleSoft software necessary to safeguard the confidential information that its clients store on the PeopleSoft software. Other Defendants named in the Related Actions, including Illinois Central College, Glendale Community College, and Nissan North America, Inc., are enterprise clients of Oracle's PeopleSoft software. Each of the Related Actions is predicated on allegations that on or around June 10, 2026, cybercriminals exploited vulnerabilities in Oracle's PeopleSoft software and extracted the PII of Plaintiffs and millions of potential class members. Plaintiffs each allege that the Data Incident compromised their sensitive and confidential PII, that Defendants had a duty to safeguard that information and prevent

foreseeable threats to its confidential nature, and that Plaintiffs and putative class members are now subject to a present and continuing risk of identity theft and fraud as a result. The Related Actions seek to remedy Defendants' alleged failures and the alleged consequences to Plaintiffs and putative class members allegedly arising therefrom. Following the alleged public announcement of the Data Incident, Plaintiffs each filed their complaints as putative class actions on behalf of themselves and all others affected by the Data Incident.

Because the Related Actions before this Court are predicated on the same alleged facts, involve common questions of law and fact, and seek substantially the same relief, consolidation is appropriate. The Related Actions, the parties thereto, and the Court will be best served in a consolidated proceeding, which will preserve party and judicial resources, eliminate the risk of inconsistent rulings, and prevent duplication of effort and unnecessary motion practice.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Standard for Consolidation

Federal Rule of Civil Procedure 42(a) provides that:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

"Rule 42(a) provides district courts with broad authority to consolidate actions that 'involve a common question of law or fact.'" *Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011) (quoting Fed. R. Civ. P. 42(a)); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("The trial court's managerial power is especially strong and flexible in matters of consolidation.").

"The purpose of consolidation is to permit trial convenience and economy in administration." *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 (citation omitted).

Accordingly, "district judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* at 1013 (citation, quotations, and alterations omitted); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc*., 712 F.2d 978, 989 (5th Cir. 1983) ("Consolidating actions in a district court is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay."). The following factors are pertinent to whether to consolidate actions:

> (1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*Bayati v. GWG Holdings, Inc*., No. 3:22-CV-0410-B, 2023 WL 5925880 *2 (N.D. Tex. Sept. 12, 2023).

**B. The Court Should Consolidate the Related Actions into the *C.A.* Action.**

The Related Actions, along with any additional cases arising from the same Data Incident, should be consolidated into the first-filed *C.A.* case and promote a single unified action without prejudicing any party. Consolidation will reduce duplicative discovery, prevent inconsistent rulings, and ensure an efficient pre-trial process.

***1. The Related Actions are Pending in the Same Court.***

The Related Actions are all pending in the Western District of Texas, Austin Division. Consolidation is straightforward and promotes judicial economy. Because all Related Actions are filed in this District, the first factor guiding the Court's analysis weighs in favor of consolidation. *See U.S. ex rel Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-cv-1141-B, 2021 WL 9145414, at *2 (N.D. Tex. Mar. 15, 2021) (first factor satisfied when "the cases are pending in the same court").

***2. The Related Actions Share Common Parties.***

The second factor is likewise satisfied because all Related Actions are asserted against a common Defendant and seek to certify national classes of similarly situated individuals whose PII was allegedly compromised in the Data Incident. *See Lockhart v. El Centro Del Barrio*, No. SA-23-cv-01156, 2024 WL 303253, at *2 (W.D. Tex.) (fact that all cases filed on behalf of same class of data breach victims against same defendant supports consolidation); *Bayati*, 2023 WL 5925880, at *2 (consolidating actions filed on behalf of same proposed class against same defendant). While the named Plaintiffs differ and some actions name defendants in addition to Oracle, they seek to represent the same group of affected individuals and allege substantially similar facts based upon the same PeopleSoft Data Incident. This factor strongly supports consolidation.

***3. Consolidation Does Not Pose a Risk of Prejudice or Confusion.***

Consolidating the Related Actions does not pose a risk of prejudice or confusion. To the contrary, by consolidating the Related Actions, Defendants will be notified of all actions filed against them regarding the same underlying Data Incident which assert overlapping claims, seek similar injunctive and monetary relief, and assert common questions of law and fact. Courts have recognized that consolidation is appropriate where multiple actions arise from the same data breach event. *See e.g.*, *Lockhart*, 2024 WL 303253, at *2 (finding consolidation appropriate because "Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) ("it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged" data privacy incident).

Consolidation will uniformly allow Defendants to respond to a single consolidated action

rather than responding and filing pleadings in each separate action, causing confusion and prejudice to parties. Thus, the third factor weighs heavily in favor of consolidation.

#### ***4. Consolidation of the Related Actions Will Cure the Risk of Inconsistent Adjudication of Common Factual or Legal Questions if the Matters are Tried Separately.***

As mentioned above, the Related Actions contain similar, if not identical, common questions of law and fact. Trying the Related Actions separately would risk inconsistent findings and rulings in each case arising from the same Data Incident, brought on behalf of the same putative class of individuals allegedly affected, against the same Defendant. *See Lockhart*, 2024 WL 303253, at *2 ("[c]onsolidation will ensure consistent rulings and promote judicial economy" where three cases asserted "causes of action based on the same data breach resulting from the same cyberattack"); *JFP Servs., L.L.C. v. Torans*, No. SA-17-CV-00210-FB, 2017 WL 9362704, at *2 (W.D. Tex. Dec. 21, 2017) ("In light of these common questions of law and fact, the Court finds there is a risk of inconsistent adjudication if the Court were to allow these cases to be tried separately before different judges[.]"). Additionally, "[a]ny prejudice to the parties flowing from the consolidation would be minimal in comparison to these considerations." *Id.*; *see also Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-02408-P, 2014 WL 12577069, at *3 (N.D. Tex. Jan. 28, 2014) ("Given the substantial similarities among the facts and causes of action, the prospect of confusion incumbent on the fact finder will be nominal at best because these cases tell the same story[.]"); *Zolezzi v. Celadon Trucking Servs.*, No. H-08-3058, 2009 WL 736057, at *2 (S.D. Tex. March 16, 2009), ("[T]he risk of prejudice or confusion if the cases are consolidated is minimal. This risk is, therefore, outweighed by the risk of inconsistent judgments should the cases be tried separately."). Because the cases are aligned in legal content, consolidation will streamline the litigation and prevent inconsistent adjudication of common questions of law and

fact.

#### *5. Consolidation Will Reduce Costs and Delay.*

The Related Actions are in their early stages. Consolidating these cases now for pretrial purposes will avoid duplicative motions, discovery disputes and judicial workload. Proceeding separately would impose unnecessary cost and delay and risk inconsistent rulings. Consolidation imposes no prejudice and serves the interests of both the Court and the Parties. Importantly, consolidation will certainly reduce the time and costs for all involved by eliminating the need for separate filings, discovery, settlement negotiations, hearings, and trials for the cases arising from the same Data Incident. This factor thus weighs in favor of consolidation. *See Bayati*, 2023 WL 5925880, at *2 (where two actions "make nearly identical legal claims based on the same set of facts," and were "filed on behalf of the same proposed class," consolidation "would therefore promote judicial efficiency"); *Gate Guard Servs. L.P. v. Solis*, No. CIV.A. V-10-91, 2011 WL 2784447, at *15 (S.D. Tex. July 12, 2011) (ordering consolidation where "the same factual and legal issues exist in both cases and consolidating the actions would be more efficient than litigating the two cases separately").

#### *6. The Related Cases are Aligned in Procedural Posture and are at the Same Stage of Preparation for Trial.*

Finally, because all Related Actions are at the same early procedural stage, the sixth factor weighs in favor of consolidation. *See Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-1040-B, 2023 WL 4108845, at *2 (N.D. Tex. June 20, 2023) (granting consolidation where cases at the same pre-trial stage); *Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-cv-00146-DAE, 2013 WL 1411773, at *2 (W.D. Tex.) (ordering consolidation where "the cases were filed less than one month apart, no dispositive motions have been filed in either case, and very little

discovery has occurred"); *Gabriel v. OneWest Bank FSB*, No. CIV.A. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012) (ordering consolidation where "[n]either case has been set on schedule yet, so the litigation is at the same stage in both"). All Related Actions have been filed in June and July 2026 and are awaiting responsive pleadings from Defendants.

Accordingly, because all factors weigh in favor of consolidation, consolidating the Related Actions "is not only appropriate, but would promote this Court's judicial efficiency and economy and would tend to avoid unnecessary costs or delay." *Mayfield v. Am. Auto. Ins. Co.*, No. Civ.A.502CV256C, 2003 WL 21250935, at *2 (N.D. Tex.). The Court should therefore consolidate the Related Actions into the first-filed *C.A.* case.

### C. Legal Standard for Appointment of Interim Class Counsel.

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIG. ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016)); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the

following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

**D. The Court Should Appoint Interim Class Counsel.**

To avoid inefficiency, duplication, and possible prejudice to Plaintiffs, and consistent with the interests of justice, the moving Plaintiffs respectfully seek the appointment of W. Mark Lanier of the Lanier Law Firm. P.C., Gary Klinger of Milberg, PLLC, and Jeff Ostrow of Kopelowitz Ostrow P.A. as Interim Class Counsel pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure.

The Related Actions currently pending in this Court arise from the same underlying Data Incident and assert nearly identical factual allegations, legal theories and class definitions. As additional cases may follow, appointment of Interim Class Counsel is appropriate at this early stage to ensure that the interests of the putative class are effectively represented, and that litigation is coordinated and efficient.

***1. Proposed Interim Class Counsel Have Performed Substantial Work Investigating This Action.***

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and

identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Incident, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the Data Incident. Those investigations included, among other things: investigating the facts surrounding the Data Incident, including the identity of and the attack vectors employed by the criminal group claiming credit for the Data Incident; working with a forensic investigator to verify key details of the Data Incident; interviewing numerous consumers injured by the Data Incident; researching legal claims; drafting initial pleadings; and organizing Plaintiffs and their counsel and discussing consolidating the relevant actions and preparing the consolidation and proposed leadership papers. Proposed Interim Class Counsel have dedicated meaningful resources to understanding the Data Incident and the scope of the incident.

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation). Proposed Interim Class Counsel are well positioned to continue advancing the litigation efficiently and effectively. Their appointment will promote efficient case management, minimize duplication of effort, and ensure robust representation in the proposed Class from the outset.

***2. Proposed Interim Class Counsel Possess the Necessary Experience, Skill and Knowledge of the Law and are Qualified to Serve as Interim Class Counsel.***

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court

under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from each of the cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Proposed Interim Class Counsels' work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). As demonstrated below, Proposed Interim Class Counsel each have substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

Moreover, Proposed Interim Class Counsel are designated lead counsel in *In re Oracle Corporation Data Breach Litigation*, Master File No. 1:25-CV-01805-ADA-SH, a similar data breach case involving Defendant Oracle. Proposed Interim Class Counsel have already established working relationships with Defendant Oracle's counsel and evidenced their experience, skill, and knowledge on the matter. Therefore, Proposed Interim Class Counsel are more than qualified to handle this matter as well.

***i. Mark Lanier of the Lanier Law Firm, P.C.***

W. Mark Lanier has established himself as one of America's most formidable trial attorneys over a career spanning more than three decades. Mark has secured billions in verdicts and settlements, reshaping the landscape of pharmaceutical liability, medical device litigation, and

mass torts while earning international recognition for his innovative trial techniques and compelling courtroom presence.

Mark is the Lanier Law Firm's ("LLF") lead litigation counsel. He received his J.D. from Texas Tech University School of Law in 1984 and immediately began working at Fulbright and Jaworski (now Norton Rose Fulbright). In 1990, Mark founded LLF, and it has grown to over 60 lawyers with great diversity in all areas (gender, race, age, etc.), which enriches our approach and work in any litigation. Our lawyers include Professor Arthur Miller, co-author of the Wright & Miller Federal Practice and Procedure.

As LLF's lead litigation counsel, Mark has tried a range of cases in federal and state forums coast to coast, including class and mass actions, with verdicts from tried cases approaching $20 billion. Among them is the nation's first verdict for an individual plaintiff in the social media litigation. Currently Mark is lead and liaison counsel in the AT&T Data Breach MDL (N.D. Tex.) now before the Honorable Sidney A. Fitzwater. In addition, Mark's mass tort experience includes roles as lead or co-lead counsel in multiple multidistrict litigations, including: APAP litigation (Judge Denise Cote, S.D.N.Y.), Pinnacle Hip litigation (Judge Ed Kinkeade, N.D. Tex.), Google Anti-trust litigation (Judge Kevin Castel, S.D.N.Y.), Biomet hip, and Avandia litigation, as well as serving as lead trial counsel in the National Prescription Opiate litigation (Judge Dan Polster, N.D. Ohio). These appointments reflect the legal community's trust in Mark's ability to handle complex, multi-faceted litigation. LLF has also been appointed to dozens of MDL and state coordinated proceedings.

Mark is frequently invited to speak at annual conferences for MDL judges. Along with Richard Arsenault, Mark developed and maintains the annual MDL Judicial Summit in Aspen, Colorado. Along with speaking at over a dozen other CLE conferences annually, Mark singularly

teaches a 3-day Trial Academy for plaintiff attorneys with regular attendance over 1,000 attorneys. Mark teaches all 22 hours of his Trial Academy for plaintiff lawyers each summer spanning three days. With attendance over 1,000, it gives him a chance to interact and network with lawyers from all 50 states. Mark has also presented at the Fifth Circuit Judicial Conference and many Bench Bar conferences.

Mark works to have a cooperative and consensus-built, team approach, internally in his firm as well as in MDL's. Through his firm, Mark invests all the necessary time, labor, and money to prosecute firm cases, with all cases being self-funded. Mark has tried a huge number of cases, with 13 that stretched into three months. Mark tried four cases to conclusion in the Pinnacle MDL, which required a ten-million-dollar investment over ten years. Mark works collaboratively through a team-based approach, both internally within the Lanier Law Firm and across the broader MDL structure. Working cooperatively and obtaining consensus is important to him. With offices in New York, Houston, Los Angeles, and Puerto Rico, Mark gets to co-counsel with attorneys around the country and abroad.

Mark believes this consolidated action will profit from a structure with three lead counsel from whose firms teams will be created in areas of discovery, briefing, settlement, common benefit fee monitoring, and trial preparation.

Today, while based in Houston where he lives with his wife Becky and serves as father to five children, Mark continues to lead his national law firm. His practice represents clients from around the world in courtrooms across the United States, maintaining his reputation for taking on and winning complex, high-stakes litigation while never losing sight of his commitment to justice and his clients' needs. In the MDL or consolidated action landscape, any judge before whom Mark has appeared can reference what he brings to the table when tapped to lead or participate in any

capacity. A copy of Mr. Lanier's firm resume is attached hereto as ***Exhibit A***.

***ii. Gary Klinger of Milberg, PLLC***

Gary M. Klinger is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Located in Chiago, Illinois, Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, currently ranked by Chambers and Partners as Band 2 for Privacy & Data Security Litigation (2026).[2] and having been selected to Law Dragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024, 2025, and 2026)..[3] Law360 recently highlighted Mr. Klinger's work in the privacy space..[4] Mr. Klinger has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers*); Owens v. MGM Resorts International*, Case No. 23-cv-01480 (D. Nev.) (Mr. Klinger served as class counsel and obtained a settlement of $45 million in a data breach class action). Over the past 3 years, Mr. Klinger has settled on a classwide basis more than 100 class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this period. Representative cases include: *Parris, et al., v. Meta Platforms, Inc.*, Case

[2] https://chambers.com/lawyer/gary-klinger-usa-5:26875006. Mr. Klinger is one of only five plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation. 2026 is his third consecutive year being ranked by Chambers.

[3] https://www.lawdragon.com/guides/2025-09-05-the-2026-lawdragon-500-leading-litigators-in-america

[4] https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger

No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action); *Boone v. Snap, Inc*., Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action).

Mr. Klinger has also successfully litigated class actions through contested class certification. In *Karpilovsky v. All Web Leads, Inc*., No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id*. At the time, it was the largest litigation class ever to be certified for violations of the Telephone Consumer Protection Act. Mr. Klinger and the data privacy practice group at Milberg (which was given a Band 3 rating by Chambers & Partners for Privacy & Data Security: Litigation – USA – Nationwide in 2026) continue seeking class certification in data breach cases, recently filing (along with co-counsel, including Mr. Siegel) fulsome class certification motions in multi-million person data breach cases in the Southern District of Florida[5] and the Northern District of Texas.[6] These motions demonstrate that Milberg is one of very few firms in the plaintiffs' data breach bar who is truly willing to litigate data breach class actions for the benefit of the classes they represent. A copy of Mr. Klinger's firm resume is attached hereto as ***Exhibit B***.

---

[5] *In re Lakeview Loan Servicing Data Breach Litigation*, Master File No. 1:22-cv-20955-DPG (S.D. Fla.), ECF Doc. 282 (Plaintiffs' Motion for Class Certification and Memorandum of Law in Support, March 31, 2025)

[6] *Cabezas et al. v. Mr. Cooper Group, Inc. et al.,* Civil Action No. 3;23-CV-2453-N (N.D. Tex.), ECF Doc. 198 (June 18, 2026)(referencing Plaintiffs' Motion for Class Certification served on defendants on April 1, 2026)

***iii. Jeff Ostrow of Kopelowitz Ostrow P.A.***

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. ("KO"). KO and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 30 attorneys. Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in this action.

Mr. Ostrow is counsel of record in more than 400 pending data breach cases. He is currently court-appointed Lead Counsel in MDLs and in federal and state courts across the country. He is Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people, and settled for $27 million. Additional examples of data breach cases in which he serves as Lead Counsel include: *In Re: AT&T Inc. Customer Data Sec. Breach Litig.*, 3:24-cv-00757 (N.D. Tex.), which settled for $177 million; *Owens v. MGM Resorts Int'l*, 2:23-cv-01480-RFB-MDC (D. Nev.), which settled for $45 million; *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), which settled for $13.75 million; *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients; and *In re DISA Global Data Breach Litig.*, No. 4:25-cv-00821 (S.D. Tex.), affecting 3.3 million individuals. Moreover, Mr. Ostrow has court-appointed positions in MDLs including *In re: Evolve Bank & Trust Customer Data Breach Litig.*, MDL No. 3127 (W.D. Tenn.), which settled for $17.0 million, as well as *In re: Snowflake, Inc., Data Breach Litig.*, MDL No. 3126 (D. Mont.); and *In re: PowerSchool Holdings, Inc. Customer Data Sec. Breach Litig.*,

MDL No. 3149 (S.D. Cal.).

For 13 years, KO has served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL resulting in recovery of $1.2 billion from the nation's largest banks, and Liaison Counsel in *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. KO is also co-counsel for Broward County and the City of Fort Lauderdale in *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), recovering $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, U.S. District Judge James Lorenz made the following observation in granting final approval of a settlement including a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to end an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

In another recent case in which Mr. Ostrow was lead counsel, U.S. District Judge Jose Martinez noted, "Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims ... The case involved difficult factual and legal issues from a global pandemic. ... Despite the strong defenses presented by [Defendant], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14. Mr. Ostrow has worked productively with Proposed Interim Class

Counsel in other cases. A copy of Mr. Ostrow's firm resume is attached hereto as ***Exhibit C***.

***3. Proposed Interim Class Counsel Have and Will Continue to Devote Sufficient Resources to this Case.***

The resources that Proposed Interim Class Counsel have already committed and will continue to commit to the case also strongly support their appointment. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar data privacy cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information of experience will also allow them to streamline the litigation.

***4. Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel.***

Proposed Interim Class Counsel have the support of a majority of the plaintiffs in the Related Actions, which weighs in favor of their appointment. *See In re Aluminum Phosphide Antitrust Litig.*, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) (In designating lead counsel, courts "also give due consideration to the preferences expressed by the parties themselves, through their counsel."). Additionally, Proposed Interim Class Counsel moved quickly to coordinate the leadership structure to avoid delay with potential multi-district litigation proceedings due to the egregious nature of Defendant's unlawful conduct. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the class and intend to litigate the case zealously while fully aware of the Court's expectation that they prosecute the case efficiently and with no duplication. Thus, they have already discussed how best to organize to efficiently prosecute and manage the case while avoiding unnecessary and duplicative billing.

**E. The Court Should Appoint a Plaintiffs' Executive Committee.**

As noted above, Plaintiffs also respectfully submit that the Court appoint a Plaintiffs' Executive Committee ("PEC") comprised of the following attorneys: Anthony M. Christina of Lowey Dannenberg, P.C. and Grayson Wells of Stranch, Jennings & Garvey, PLLC.

District courts routinely approve Plaintiffs' Executive Committees in complex data breach and privacy class actions. *See*, *e.g.*, *Cabezas v. Mr. Cooper Group, Inc.*, No. 3:23-cv-02453, ECF No. 61 (N.D. Tex. May 1, 2024) (data breach class action appointing 3 co-lead counsel and a 9 member as Plaintiffs' Executive Committee, finding "[a] multi-tiered structure is not uncommon in class action cases concerning large-scale data breaches."); *In re: Eskenazi Health Data Incident Litig.*, Case No. 49D01-2111-PL-038870 (Ind. Comm. Ct. Jan. 24. 2022) (appointing three lawyers to PSC in class action involving disclosure of sensitive medical information and other PII/PHI); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, Case No. 21-md-02994 (RAR), 2022 WL 777021, at *1 (S.D. Fla. Feb. 22, 2022) (court "adopted the Majority Groups' proposed leadership structure, including the creation of the PSC" and "appointed five law firms to the PSC"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, Case No. 11-md-2258 (AJB) (MDD), ECF No. 60 (S.D. Cal. Nov. 29, 2011) (appointing two firms as co-lead counsel and a five-firm PSC in data breach class action lawsuit); *In re Experian Data Breach Litig.*, Case No. 15-cv-01592 (C.D. Cal.) (appointing multiple co-leads and a plaintiffs' steering committee).

Mr. Christina and Mr. Wells each have extensive background litigating data breach cases. Mr. Christina and his firm have previously served as Class Counsel and/or on Plaintiffs' Executive Committees in the following data breach cases: *Hozza V. PrimoHoagies Franchising, Inc.*, Case No. 1:20-cv-04966 (D.N.J.) (Class Counsel); *In re Wawa, Inc. Data Security Litigation*, Case No. 2:19-cv-06019 (E.D. Pa.) (Class Counsel); *In Re: Data Security Cases Against NELNET*

*SERVICING, LLC*, Case No. 4:22-cv-3191 (D. Neb.) (Class Counsel); *Wahab, et al., v. Boston Children's Health Physicians, LLP, et al.*, Index No. 73692/2024 (Westchester Supreme) (Class Counsel); *In re USAA Data Security Litigation*, Case No. 7:21-cv-5813-VB (SDNY) (Class Counsel); *Rand v. The Travelers Indemnity Company*, Case No. 7:21-cv-10744-VB (SDNY) (Class Counsel); *In re: NCB Management Services, Inc. Data Breach Litigation*, Case No. 2:23-cv-01236-KNS (E.D. Pa.) (Class Counsel); *Barr v. Drizly, LLC f/k/a Drizly, Inc., et al.*, Case No. 1:20-cv-11492 (D. Mass.) (Class Counsel); *In Re Call-on-Doc Inc Data Breach Litigation*, Case No. 3:26-cv-00200 (N.D. Texas) (Plaintiffs' Executive Committee); *Cabezas v. Mr. Cooper Group Inc.*, Case No. 3:23-cv-02453 (N.D. Texas) (Plaintiffs' Executive Committee). A copy of Lowey Dannenberg's firm resume is attached hereto as ***Exhibit D***, and a copy of Stranch, Jennings & Garvey, PLLC's firm resume is attached hereto as ***Exhibit E***.

## III. <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request the Court: (1) stay Defendants' deadlines to respond to the complaints in the individual Related Actions pending a decision on Plaintiffs' motion to consolidate actions and, if granted, until a consolidated complaint is filed; (2) consolidate the Related Actions into the first-filed action, under the caption: "*In re Oracle PeopleSoft Data Breach Litigation*"; (3) appoint W. Mark Lanier, Gary Klinger, and Jeff Ostrow as Interim Class Counsel and Anthony M. Christina of Lowey Dannenberg, P.C. and Grayson Wells of Stranch, Jennings & Garvey, PLLC to Plaintiffs' Executive Committee; and (4) set a schedule, directing Plaintiffs to file a Consolidated Complaint within 45 days after the Court appoints Interim Class Counsel, with Defendants to answer or otherwise respond to the Consolidated Complaint within 45 days after its filing. A proposed order is submitted herewith.

Dated: August 19, 2026 Respectfully submitted,

*/s/ W. Mark Lanier*
W. Mark Lanier
**The Lanier Law Firm, P.C.**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
Tel.: 713-659-5200
Fax: 713/659-2204
Mark.Lanier@lanierlawfirm.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: 954-332-2100
ostrow@kolawyers.com

Gary Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
gklinger@milberg.com

***Proposed Interim Class Counsel***

Anthony M. Christina
**LOWEY DANNENERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
achristina@lowey.com

Grayson Wells*
John C. Roberts*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gwells@stranchlaw.com
jroberts@stranchlaw.com

*Proposed Plaintiffs' Executive Committee*
**Pro hac vice forthcoming*

## CERTIFICATE OF CONFERENCE

This is to certify that Plaintiffs' counsel has met and conferred with counsel for Defendant Oracle, who does not oppose consolidation and takes no position on the appointment of interim class counsel. Plaintiffs' counsel has been unable to meet and confer with the other Defendants regarding their position on the motion and those Defendants have not yet appeared in the Related Actions.

*/s/ W. Mark Lanier*
W. Mark Lanier

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing instrument was filed using the Court's CM/ECF system on August 19, 2026, which will deliver electronic notice of same to all counsel of record.

*/s/ W. Mark Lanier*
W. Mark Lanier